Jesse Kodadek
Elliott D. McGill
PARSONS BEHLE & LATIMER
127 East Main Street, Suite 301
Missoula, MT 59802
(406) 317-7220
jkodadek@parsonsbehle.com
emcgill@parsonsbehle.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| MARGARET ARMSTRONG and PINEHURST CAMP, LLC,<br><br>Plaintiffs,<br>v.<br><br>ROBERT VINCENT MORRISON TIERNEN,<br><br>Defendant. | Cause No.<br><br>**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiffs Margaret Armstrong ("Margaret") and Pinehurst Camp, LLC ("Pinehurst"), through counsel, for their causes of actions against Defendant Robert Vincent Morrison Tiernan ("Tiernan") allege as follows:

### PARTIES, JURISDICTION, AND VENUE

1.   Margaret is a resident of the state of South Carolina currently residing in Spartanburg, South Carolina.

2. Pinehurst is a limited liability company organized under the laws of the state of South Carolina. Margaret is the sole member of Pinehurst.

3. Upon information and belief, Tiernan is a resident of the state of Colorado currently residing in Fort Collins, Colorado.

4. This is a civil action between citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs. The Court therefore has original jurisdiction under 28 U.S.C. § 1332.

5. Lake County, Montana, is the location where the property that is the subject of the action is situated and where a substantial parts of the events or omissions giving rise to the claims occurred. Accordingly, venue in this Court is appropriate under 28 U.S.C. § 1391(b)(2). Venue in the Missoula Division is similarly appropriate under Local Rules 1.2(5) and 3.2(b).

## ALLEGATIONS COMMON TO ALL COUNTS

6. For over 30 years, Margaret and, subsequently, Pinehurst were the owners of an undivided one-half interest in real property located at 29342 Black Point Road in Polson, Montana ("the Property") and more particularly described as:

> Lots 1, 2, 3, 4 and 5 in Block 2 of SAFETY BAY VILLA SITE, according to the map or plat thereof on file in the office of the Clerk and Recorder of Lake County, Montana.
>
> EXCEPTING THEREFROM those lands heretofore conveyed by Deed, recorded under Microfile No. 261038 in the records of Lake County, Montana.

7. Between 1991 and 2018, the other undivided one-half interest in the Property was owned by Margaret's brother, Robert A. Tiernan ("Robert").

8. Between 1941 and 1991, the Property was owned by Robert and Margaret's parents, Nan and Bob Tiernan.

9. Between 1927 and 1941, the Property was owned by other relatives of Robert and Margaret, Al and Helen Haas.

10. Since she was a small child, Margaret spent summers helping her parents operate a summer camp at the Property and otherwise spending time there with her family.

11. After having children of her own, Margaret began spending time at the Property with her own family.

12. In 1991, Nan Tiernan passed away, leaving the Property to Margaret and Robert as tenants in common.

13. In the early 2000s, Margaret pledged her interest in the Property as collateral for certain business loans to assist her husband and sons with their textile business.

14. One such loan was extended in favor of Glacier Bank in the original principal amount of $350,000 and secured by Margaret's interest in the Property (the "Glacier Bank Loan").

15. Another loan was extended in favor of the National Bank of South Carolina ("NBSC") originally executed on June 16, 2003 (the "NBSC Loan") in the principal amount of $200,000.

16. The NBSC Loan was evidenced by a Promissory Note (the "NBSC Note") and Deed of Trust and was secured by both Margaret's and Robert's interest in the Property.

17. On August 12, 2005, Robert acquired NBSC's rights and interest in the NBSC Loan, Deed of Trust, and NBSC Note via a certain Assignment of Beneficiary's Interest in Promissory Note and Montana Trust Indenture executed by NBSC and recorded in the official records of Lake County, Montana.

18. After acquiring all rights associated with the NBSC Loan, Robert made no effort to enforce the terms of the Promissory Note, and did not require Margaret or her family to make regular payments, for over 15 years.

19. Despite Rob's decision to refrain from demanding immediate repayment of the NBSC Loan, the parties all understood the debt would ultimately be repaid after the debts secured by more senior encumbrances on the Property were satisfied, especially the Glacier Bank Loan.

20. In 2008, Margaret transferred her interest in the Property to Pinehurst via Quitclaim Deed.

21. By 2015, the debt owed to Robert under the NBSC Loan had grown to $308,000.

22. At that time, Pinehurst and Margaret, as Maker, and Robert, as Payee, executed a Modification of Promissory Note dated January 22, 2015 (the "Modified Note").

23. The Modified Note modified the terms of the original NBSC Note.

24. Under the terms of the Modified Note, Margaret and Pinehurst agreed to make a lump sum cash payment to Robert in the amount of $143,000, leaving the remaining $165,000 to be repaid on or before January 22, 2018, with interest only payments at 6% per annum required during the intervening 3-year period.

25. The Modified Note also required Margaret and Pinehurst to execute a Quitclaim Deed in favor of Robert, which was to be held in escrow and recorded at the demand of Robert in the event Margaret and Pinehurst were more than 60 days delinquent in payments under the Modified Note.

26. At the time, Margaret did not understand the purpose of the quitclaim deed and would not have signed it if she did.

27. Despite requiring Margaret to execute a quitclaim deed, the Modified Note made clear it continued to be secured by the Deed of Trust associated with the NBSC Loan.

28. The Modified Note required that the quitclaim deed be held in escrow by Thompson Falls Escrow.

29. In conjunction with executing the Modified Note, the parties agreed that all payments would be made to an account managed by Thompson Falls Escrow.

30. Margaret and Pinehurst made monthly interest payments under the Modified Note for approximately two years.

31. In May 2017, Margaret's son, Michael, informed her that he spoke to Robert about the family's difficulty to make the monthly payments under the Modified Note and the Glacier Bank Loan.

32. Michael informed Margaret that Robert's response was that the family should focus on paying off the Glacier Bank Loan and resume payments under the Modified Note when they were able.

33. Taking Robert at his word, Margaret and the Armstrong family have continued to make regular payments on the Glacier Bank Loan and are current on payments thereunder.

34. Robert passed away on November 1, 2017.

35. Between June 2017 and February 2018, no payments under the Modified Note were made.

36. Between May of 2017 and February 2018, neither Robert nor his Personal Representative made any attempt to enforce any remedies under the Modified Note, despite the fact that Margaret and Pinehurst were in arrears.

37. After Robert's passing, his entire estate was left to Tiernan, Robert's estranged son.

38. Between the 1960s and mid 1990s, Tiernan had little to no contact with Robert or Margaret's family.

39. In the early 1990s, Margaret began searching for Tiernan and eventually found him.

40. After locating Tiernan, Margaret arranged for him to meet her family and be reunited with his father, Robert.

41. But for Margaret's efforts to locate Tiernan and reunite him with his father and extended family, it is possible that Tiernan and Robert may have never reconnected and Tiernan may have never obtained any interest in the Property.

42. In conjunction with closing Robert's estate, his Personal Representative prepared an Extension of Modification of Promissory Note that modified the Modified Note signed in 2015 (the "Modification Extension").

43. The Modification Extension was executed by Margaret and Pinehurst on March 7, 2018.

44. Margaret's husband, John M. Armstrong, along with two of her sons, Michal Armstrong and J. Murphy Armstrong, executed the Modification Extension as Guarantors.

45. Under the terms of the Modification Extension, Margaret and Pinehurst agreed to become current on the delinquent payments under the Modified Note and resume monthly interest only payments.

46. The Modification Extension also extended the date by which the remaining balance of the Modified Note was to be repaid until January 22, 2020.

47. Margaret and her family resumed payments for several months but stopped in late 2018 due to more financial difficulties affecting the company operated by her husband and sons.

48. Despite these challenges, the family has remained current on the Glacier Bank Loan according to Robert's directive.

49. In addition to continuing to make payments on the Glacier Bank Loan, the Armstrong family has invested time and money into maintaining the Property.

50. Shortly after Robert's passing, Margaret's son, Michael Armstrong, communicated Robert's wishes to Tiernan that the Glacier Bank Loan be repaid before the Modified Note to Tiernan. Tiernan did not manifest any objection to that plan.

51. Between October 2018 and November 2023, Tiernan never even mentioned the Modified Note or Modification Extension to Margaret, her husband, or sons.

52. Between October 2018 and November 2023, Tiernan never demanded that Margaret and Pinehurst resume payments under the Modified Note or pursued any other remedies under the Modified Note or Modification Extension including recording the Quitclaim Deed or pursuing remedies under the Deed of Trust.

53. Between October 2018 and November 2023, neither Tiernan nor Thompson Falls Escrow provided notice of any default or demanded that it be cured.

54. On November 1, 2023, without advance notice of any kind to Margaret, Pinehurst, or any of his other family members, Tiernan, through counsel, directed Thompson Falls Escrow to release the Quitclaim Deed to him.

55. Neither Tiernan nor his counsel provided notice of any kind to Margaret, Pinehurst, or the Armstrong family.

56. On November 6, 2023 Thompson Falls Escrow released the Quitclaim Deed to Tiernan's counsel and informed Margaret and Pinehurst by letter, which was sent to the incorrect address.

57. But for the letter from Thompson Falls Escrow, Margaret, Pinehurst, and the Armstrong family likely would not have known the Quitclaim Deed had been released to and recorded by Tiernan.

58. On November 13, 2023, Tiernan caused the Quitclaim Deed to be recorded in the official records of Lake County, Montana.

59. Margaret and her family immediately tried to communicate with Tiernan to resolve the situation and received no response.

60. Between April and early October of 2024, counsel for Margaret and Pinehurst communicated with counsel for Tiernan in good faith to resolve the situation and return Pinehurst's lawful interest in the Property to it.

61. During that period, Tiernan, through counsel, agreed to inform Margaret and Pinehurst if he decided to market the Property for sale while their communications were ongoing.

62. On October 1, 2024, Tiernan, through newly retained counsel, informed the undersigned that Tiernan was not interested in any informal resolution, that he intends to market and sell the Property, and that he would not inform Margaret, Pinehurst, or their counsel when he decides to do so.

63. Left with no other options to save the Property that has been in Margaret's family for nearly a century, Margaret and Pinehurst bring this action for damages and declaratory relief against Tiernan.

## COUNT I – UNJUST ENRICHMENT

64. Margaret and Pinehurst incorporate and reallege the allegations in the foregoing paragraphs as though fully set forth herein.

65. A benefit was conferred upon Tiernan by wrongfully obtaining the one-half interest in the Property previously held by Margaret and Pinehurst.

66. Tiernan appreciated and had knowledge of that benefit, as evidenced by his recording of the Quitclaim Deed in November 2023.

67. Allowing Tiernan to retain the benefit of 100% ownership of the Propery without payment of its value to Margaret and Pinehurst would be inequitable because, *inter alia*:

    a. Robert and later Tiernan directed Margaret and Pinehurst not to make payments on the NBSC Loan until they had paid off the more senior Glacier Bank Loan;

    b. Margaret and Pinehurst relied on Robert's directive, are current on their payment obligations under the Glacier Bank Loan, and have continued to make payments even after Tiernan wrongfully recorded the Quitclaim Deed;

    c. Neither Robert nor Tiernan ever threatened to take action against Margaret and Pinehurst in the event of default under the original note, Modified Note, or Modification Extension;

    d. Tiernan never raised the issue of default or informed Margaret or Pinehurst that they were in default, and instead was aware of,

     acquiesced to, and ratified the longstanding course of performance between Margaret, Pinehurst, and Robert;

  e. Tiernan recorded the Quitclaim Deed without notice of any kind to Margaret or Pinehurst or an opportunity to cure any default; and

  f. Tiernan has continued to benefit from Margaret and Pinehurst's payments on the Glacier Bank Loan even after wrongfully acquiring Pinehurst's 50% interest in the Property.

68. Allowing Tiernan to retain the benefit of 100% ownership of the Property based on the foregoing constitutes unjust enrichment and entitles Margaret and Pinehurst to restitution from Tiernan in the form of monetary damages or imposition of a constructive trust.

## COUNT II – CONSTRUCTIVE TRUST

69. Margaret and Pinehurst incorporate and reallege the allegations in the foregoing paragraphs as though fully set forth herein.

70. "A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if he were permitted to retain it." *Volk v. Goeser*, 367 P.3d 378, 390 (Mont. 2016).

71.   Tiernan is holding title to Pinehurst's 50% interest in the Property and would be unjustly enriched if allowed to retain it based on the facts and circumstances described in this Complaint.  Therefore, Tiernan is under an equitable duty to reconvey it to Pinehurst.

72.   Imposing a constructive trust on Pinehurst's 50% interest in the Property is appropriate and necessary to prevent Tiernan from becoming unjustly enriched.

## COUNT III – BREACH OF CONTRACT

73.   Margaret and Pinehurst incorporate and reallege the allegations in the foregoing paragraphs as though fully set forth herein.

74.   A valid and enforceable oral contract was formed in 2017 when Robert agreed to refrain from exercising any rights under the Modified Note in the event of a default by Margaret until the more senior Glacier Loan had been satisfied, and when Pinehurst and Margaret continued to perform under that oral modification.

75.   Tiernan had notice of that contract and continued to perform consistent with its terms between the time of Robert's passing and November 1, 2023.

76.   Tiernan breached that contract by recording the Quitclaim Deed.

77.   Margaret and Pinehurst are entitled to an award of monetary damages caused by Tiernan's breach, in an amount to be proven at trial.

## COUNT IV – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

78. Margaret and Pinehurst incorporate and reallege the allegations in the foregoing paragraphs as though fully set forth herein.

79. Valid contracts existed between Tiernan, Margaret, and Pinehurst in the form of the oral contract described in Count III and in the form of the NBSC Note, Modified Note, and Modification Extension.

80. Under Montana law, "every contract, regardless of type, contains an implied covenant of good faith and fair dealing," which is a "mutual promise implied in every contract that the parties will deal with each other in good faith, and not attempt to deprive the other party of the benefits of the contract through dishonesty or abuse of discretion in performance." *Phelps v. Frampton*, 170 P.3d 474, 482 (Mont. 2007).

81. Tiernan's conduct described in this Complaint violate the implied covenant of good faith and fair dealing and entitle Margaret and Pinehurst an award of monetary damages in an amount to be proven at trial.

## COUNT V – WRONGFUL FORECLOSURE

82. Margaret and Pinehurst incorporate and reallege the allegations in the foregoing paragraphs as though fully set forth herein.

83. Montana law construes "a deed absolute on its face delivered in connection with [an] indebtedness" as "a mortgage when it is shown that the

instrument was intended to secure the indebtedness." *Hanson v. Bonner*, 661 P.2d 421, 423 (Mont. 1983).

84. Montana law also provides only "one action for the recovery of debt or for the enforcement of any right secured by a mortgage upon real estate which action must be in accordance with the provisions of the Montana statutes." *Id.* at 423-24.

85. The Quitclaim Deed executed in conjunction with the Modified Note constitutes a mortgage under Montana law.

86. Tiernan violated Montana foreclosure law by, *inter alia*:

   a. recording the Quitclaim Deed without notice of any kind to Margaret or Pinehurst;

   b. failing to comply with Montana's judicial foreclosure process applicable to mortgages; and

   c. depriving Margaret and Pinehurst their right of redemption under Montana law;

87. Tiernan's wrongful foreclosure entitles Margaret and Pinehurst to equitable relief and/or an award of monetary damages, in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully request the following relief:

1. For imposition of a constructive trust on 50% of the Property in favor of Pinehurst;

2. An Order directing Tiernan to return Pinehurst's 50% interest in the Property immediately;

3. An award of monetary damages in an amount to be proven at trial;

4. An award of costs and attorney fees; and

5. For any other appropriate relief.

DATED this 7th day of October 2024.

PARSONS BEHLE & LATIMER

_____
Elliott D. McGill
*Attorneys for Plaintiffs*

# VERIFICATION

1. I am a named Plaintiff in this action and a member of Pinehurst Camp, LLC, the other Plaintiff in this action;

2. I have reviewed the allegations in the Verified Complaint and Demand for Jury Trial and declare under penalty of perjury they are true and correct except for those made upon information and belief.

Spartanburg, South Carolina.

Date: October __, 2024.

_____
Margaret Armstrong